IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| CHELSEY R. MEADOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:13cv114 |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | By: Michael F. Urbanski |
| Commissioner of Social Security, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on June 19, 2014, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff has filed objections to the report, the Commissioner has responded, and this matter is now ripe for the court's consideration.

I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that

> was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. Apr. 28, 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) (quoting Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982))). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. May 6, 2009), aff'd, 373 F. App'x 346 (4th Cir.), cert. denied, 131 S. Ct. 610 (2010); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the state directs the district court to review only '*those portions* of the report or *specified* proposed findings or recommendations t*o which to which objection is made.*'"). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F.

2

App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

Additionally, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of [his] entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates his previously-raised arguments will not be given "the second bite at the apple []he seeks;" instead, his re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## II.

In her objections to the report and recommendation, Meador takes issue with the following findings of the magistrate judge: (1) that substantial evidence supports the Commissioner's decision; (2) that the Administrative Law Judge's (ALJ) decision to reject the opinion of Dr. Desai is supported by substantial evidence; and (3) that the ALJ's credibility determination is supported by substantial evidence. The Commissioner, in response, argues that "Plaintiff's objections are essentially a re-argument of the same issues raised by Plaintiff in her Motion for Summary Judgment," and that "her objection essentially is that Magistrate Judge Ballou erred by not accepting the arguments in her opening brief (Dkt. 14), which is insufficient to warrant remand." Def.'s Resp. to Pl.'s Obj., Dkt. # 23, at 1.

Meador's first objection is plainly a general objection to the entirety of the report, which does not warrant de novo review by the court. Midgette, 478 F.3d at 621; Diprospero, 2014 WL

3

1669806, at *1; Camper, 2009 WL 9044111, at *2. The Commissioner is correct that Meador's other two objections consist, for the most part, of a verbatim recitation of the arguments raised in Meador's summary judgment brief. In spite of these deficiencies, however, the court has conducted a de novo review of these two portions of the magistrate judge's report and concludes the Commissioner's decision is supported by substantial evidence.

### III.[1]

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). To that end, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

In his report, the magistrate judge held that substantial evidence supports the ALJ's decision to reject the opinions of Dr. Desai, Meador's treating psychiatrist, that Meador "has not been able to function in school or employment" (Administrative Record, hereinafter "R." 226) and is "unable to

---

[1] Detailed facts about Meador's impairments and medical and procedural history can be found in the report and recommendation (Dkt. # 21) and in the administrative transcript (Dkt. # 7). As such, they will not be repeated here.

4

hold a full time job" (R. 256).² Meador objects, arguing the magistrate judge erroneously concluded that evidence supports the ALJ's finding that her condition improved when she was compliant with medication. Meador points to certain of Dr. Desai's medical records that show GAF scores of 50 and 55³ at times when she was compliant with her prescribed medication. For instance, Meador cites to treatment notes from November 2008, a few months before her alleged disability onset date. To be sure, these notes reveal a worsening of her condition—decreased stress tolerance and anger control; increased irritability, crying spells and mood swings—and a GAF of 50 while on medication. (R. 232.) But the narrative states "meds not helping," and she was told to discontinue the Trileptal she had been on and to start taking Depakote ER 500.⁴ (R. 232.) While Meador correctly identifies these November 2008 records as being inconsistent with the trend recognized by the magistrate judge and ALJ, it appears the symptoms she was experiencing may have been attributable to the particular medication prescribed at the time.

In any event, "there is not a perfect correlation between Meador's compliance with medication and increased GAF scores," as the magistrate judge aptly noted. Report & Recommendation, Dkt. # 21, at 9. For the most part, however, the records reflect an improvement in Meador's condition when she took her medication as prescribed. Indeed, while Meador experienced worsening symptoms and a GAF of 50 in April 2009, a time when she was not taking medication (R. 231), she began to stabilize and her GAF score increased to 60 after she began taking

---

² These disability opinions are found in a one-paragraph letter dated November 23, 2009 addressed to "Whom it may concern" (R. 226) and in the narrative of a July 14, 2011 treatment note (R. 256).

³ The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev.2000) (hereinafter "DSM–IV–TR"). A GAF of 41–50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id. A GAF of 51–60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Id.

⁴ The impact of this change in medication is not immediately discernible from the records, as Meador stopped taking her medication altogether the next month and did not see Dr. Desai again until the spring of the following year. (R. 231.)

5

Depakote again in late 2009. (R. 230.) Her GAF scores remained above 50 through February 2011, climbing as high as 70[5] at times, and treatment notes indicate her symptoms improved while on medication. (R. 229, 248, 249, 250, 251, 252.)

As Meador points out, however, Dr. Desai began to once again assess GAFs of 50 beginning in May 2011, medication compliance notwithstanding. But the treatment notes from this period are rather unremarkable and do not reveal a significant worsening of Meador's condition. For instance, records from May 4, 2011 show Meador's sleep, energy, appetite, stress tolerance, worries, and eye contact were all good. (R. 247.) Her anger control, crying spells, depression and mood swings were noted to be unchanged but her irritability increased. The narrative offers a possible explanation for this increased irritability, stating Meador "gets agitated when she has to get her Depo Provera" birth control shots. (R. 247.) Overall, Meador reported she was "doing ok" at this visit. (R. 247.) Likewise, progress notes from July 14, 2011 reveal good sleep, energy, appetite, stress tolerance, worries, and eye contact. (R. 246.) Her irritability, anger control, crying spells, depression and mood swings were noted to be unchanged. Notes state Meador displayed a "very labile mood and affect," but she reported she was "doing fairly well." (R. 246.) In October 2011, treatment records once again show her sleep, energy, appetite, stress tolerance, worries, and eye contact were good, and her irritability, anger control, crying spells, depression and mood swings unchanged. Meador reported doing "about the same." (R. 254.) All three of these treatment notes indicate Meador was to continue present treatment plans and return in three months. There is little on the face of these records to explain the lower GAF scores.

Generally, a treating physician's opinion is to be given controlling weight by the ALJ if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not

---

[5] GAF of 61–70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM–IV–TR at 34.

6

inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."). In determining the weight to give to a medical source's opinion, the ALJ must consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, "[t]he treating physician rule is not absolute. An 'ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence.'" Hines v. Barnhart, 453 F.3d 559, 563 n.2 (4th Cir. 2006) (quoting Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

Dr. Desai's opinions that Meador is unable to maintain full-time employment appear twice in the record—once in the form of a generic letter written and again in the narrative of a treatment note—without explanation or a description of the nature and extent of her functional limitations. These are precisely the types of conclusory statements that amount to a disability determination, not a medical opinion entitled to controlling weight under the treating physician rule. A determination of disability is a decision reserved to the Commissioner and, as such, these statements are not entitled to special significance. See 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3).

Moreover, the evidence supports the ALJ's conclusion that, on the whole, Meador's condition improved at times when she was compliant with treatment.[6] The ALJ reviewed Dr. Desai's medical records and considered Meador's various GAF scores in his opinion. The ALJ gave great weight to the opinions of the reviewing state agency physicians, who determined that Meador

---

[6] In fact, both Meador and her mother testified at the administrative hearing that Meador's medications help with her condition. (R. 33, 40.)

7

is not completely disability from all work.  The ALJ incorporated the non-exertional limitations identified by the state agency physicians into his residual functional capacity assessment, determining Meador can perform simple, routine, and repetitive unskilled tasks that require no more than occasional decision making and occasional changes in the work setting; she cannot perform production rate or pace work with strict production standards; and she can only have occasional interaction with co-workers, supervisors, and the public.  (R. 16-17.)  These limitations are supported by the evidence of record and, in fact, account for many of the concerns raised by Meador and her mother at the administrative hearing stemming from Meador's part-time job at a grocery store, at which she says she becomes easily frustrated with customers and co-workers.

      Meador also argues in her objections that the magistrate judge erred in concluding the ALJ's credibility determination is supported by substantial evidence.  Meador asserts once again that the record does not support the ALJ's finding that her condition stabilized and improved with treatment.  For the same reasons cited above, the court finds no basis for disturbing the ALJ's credibility determination.  See Johnson v. Barnhart, 434 F.3d 650, 658–59 (4th Cir. 2005) (per curiam) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)).  A claimant's statements alone are not enough to establish a physical or mental impairment.  20 C.F.R. §§ 404.1528(a), 416.928(a).  Subjective evidence cannot take precedence over objective medical evidence or the lack thereof.  Craig, 76 F.3d at 592 (quoting Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986)).  Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations.  See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human

Servs., 898 F.2d 21, 23 (4th Cir.1989)).  Accordingly, Meador's objections to the report and recommendation will be overruled.

## IV.

In sum, "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if [her] decision is supported by substantial evidence." Hays, 907 F.2d at 1456.  The court has reviewed the magistrate judge's report, the objections to the report, and the pertinent portions of the administrative record and, in so doing, made a de novo determination of those portions of the report to which Meador objected.  The court finds that the magistrate judge was correct in concluding that there is substantial evidence in the record to support the ALJ's decision.  As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered to that effect.

Entered:  July 18, 2014

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge